# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 08-CV-0074 (JFB) (ETB)

JOY REYES, AS INFANT PLAINTIFF BY HER MOTHER AND NATURAL GUARDIAN, ELLEN REYES INDIVIDUALLY,

Plaintiffs,

VERSUS

FAIRFIELD PROPERTIES, DAVID BERGER, DAVID FORD, AND DAVID NOBILE,

Defendants.

**MEMORANDUM AND ORDER**
September 24, 2009

JOSEPH F. BIANCO, District Judge:

Plaintiff Ellen Reyes, on behalf of herself and her infant daughter Joy Reyes (collectively, "plaintiffs"), brought this action against defendants Fairfield Properties, David Berger, David Ford, and David Nobile (collectively, "defendants"), alleging that defendants discriminated and retaliated against plaintiffs on the basis of disability and race in connection with the provision of housing, and asserting federal claims pursuant to the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3602(f)(2), 3602(f)(3)(B), 3617, and 42 U.S.C. § 1982 ("Section 1982"), as well as state law claims of intentional infliction of emotional distress ("IIED"), breach of contract, breach of implied duty of good faith and fair dealing, unlawful eviction, and violations of the New York State Human Rights Law, Executive Law § 296 ("NYSHRL").

Defendants now move to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part defendants' motion. Specifically, plaintiffs' claims based on disability discrimination and retaliation under the FHAA and NYSHRL survive dismissal, in accordance with the limitations set forth in this Memorandum and Order. However, plaintiffs' claim based on race discrimination pursuant to Section 1982 is dismissed with leave to replead. Plaintiffs' state law claims also survive, with the exception of the IIED claim and unlawful eviction claim, the latter being dismissed without leave to replead. Plaintiffs are also granted leave by the Court to file a second amended complaint adding the fee owner of the subject premises, Fairfield 64 Gibson LLC, as an additional defendant, pursuant to Rules 15(a) and 20(a) of the Federal Rules of Civil Procedure. In the second

amended complaint, which shall be filed within thirty (30) days of this Memorandum and Order, plaintiffs may also supplement their allegations regarding discrimination and retaliation based on race and replead the Section 1982 and IIED claims.

## I. BACKGROUND

### A. Facts

The following facts are taken from the amended complaint ("Compl."), which the Court assumes to be true for the purposes of deciding this motion and construes them in the light most favorable to plaintiffs, the non-moving party. In addition, the Court takes judicial notice of plaintiffs' filings with the New York State Division of Human Rights ("NYDHR"), and other related court filings, which were attached as exhibits to the defendants' moving papers.[1]

Plaintiff Ellen Reyes (hereinafter, "Reyes") is an African-American female and parent and natural guardian of the infant plaintiff Joy Reyes. (Compl. ¶ 7.) Reyes is a resident of the State of New York, County of Nassau. (Compl. ¶ 7.) Plaintiff Joy Reyes (hereinafter, "Joy") is an African-American resident of the State of New York, County of Nassau, and a minor who suffers from cerebral palsy. (Compl. ¶ 8.) Joy is permanently bound to a wheelchair due to her inability to walk and support herself. (Compl. ¶ 14.)

Defendant Fairfield Properties (hereinafter, "Fairfield") is an agency located in Commack, New York that provides assistance with rentals, sales, and property management. (Compl. ¶ 9.) The property in question in this case is managed by Fairfield and located in Valley Stream, New York. (Compl. ¶ 9.) Defendant David Berger (hereinafter, "Berger") was employed at all relevant times as the Director of Leasing for Fairfield, and possessed managerial responsibility over the subject premises, including leasing and renting thereof. (Compl. ¶ 10.) At all relevant times, defendant David Ford (hereinafter, "Ford") was employed as the Property Manager for Fairfield, and possessed managerial responsibility over the subject premises, including leasing and renting thereof. (Compl. ¶ 11.) At all relevant times, defendant David Noble (hereinafter, "Noble") was

---

[1] It is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records. *See, e.g., Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). Thus, in deciding motions to dismiss in discrimination actions, courts regularly take notice of NYDHR filings and determinations relating to a plaintiff's claims. *See, e.g., Lindner v. Int'l Bus. Mach. Corp.*, No. 06 Civ. 4751 (RJS), 2008 WL 2461934, at *1 n.1 (S.D.N.Y. June 18, 2008) (taking judicial notice of NYDHR filings); *Evans v. N.Y. Botanical Garden*, No. 02-CV-3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002) (taking judicial notice of documents issued by the NYDHR). In addition, the Court may take judicial notice of documents filed in related litigation by a plaintiff. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.

1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *see also Nealy v. Berger*, No. 08 Civ. 1322 (JFB), 2009 WL 704804, at *1 (E.D.N.Y. Mar. 16, 2009) (taking judicial notice of court filings); *In re Enron Corp.*, 379 B.R. 425, 431 n.18 (S.D.N.Y. 2007) ("Judicial notice of public records such as court filings, is clearly appropriate.").

employed as the "Assistant Director Field" for Fairfield. (Compl. ¶ 12.)

In or about 2005, plaintiffs moved into an apartment owned and operated by Fairfield, located in Valley Stream, New York. (Compl. ¶ 13.) Plaintiffs could not access the parking lot by traveling through the rear corridor of the building because the corridor was too narrow for Joy's wheelchair. (Compl. ¶ 15.) Instead, Reyes had to push her daughter in her wheelchair around the front of the apartment complex down the driveway on the side of the building. (Compl. ¶ 15.) Plaintiffs further allege that the driveways and parking lot at the apartment complex were not properly illuminated at night and were scattered with potholes, subjecting Joy to discomfort whenever her wheelchair got caught in the potholes and dislodged her from a level position. (Compl. ¶ 16.)

During the fall of 2006, plaintiffs allege that Ford told Reyes that Joy would get wheelchair access to her apartment. (Compl. ¶ 26.) However, when the walkways were reconstructed soon thereafter, plaintiffs claim that defendants failed to provide any wheelchair access for Joy. (Compl. ¶ 26.)

By letter on or about July 20, 2007, the Long Island Housing Services ("LIHS") sent Fairfield a reasonable accommodation specification, LIHS Nos. 07-016 and 07-133. (Compl. ¶ 17.) The following accommodations were requested by the LIHS: (1) accessible building entrance on an accessible route; (2) curb ramps or access aisles at the dwelling entrances; (3) designated accessible parking with appropriate signs; (4) widened bathroom doors to accommodate wheelchair access; and (5) elimination of level changes at the primary entry door to, *inter alia*, plaintiffs' apartment.

(Compl. ¶ 18.) Plaintiffs assert, however, that until the time of their allegedly unlawful, discriminatory, and retaliatory eviction on November 6, 2008, Fairfield made no changes to the apartment and/or apartment complex to accommodate Joy's disability. (Compl. ¶¶ 17-22.)

LIHS further provided Fairfield with two "proposal of costs" from a vendor for the accommodation requests. (Compl. ¶ 23.) The cost estimate for removal of steps and replacement with ramps at the dwelling entrance and building entrance was $5,975.00, and the estimate for widening two door openings was $1,770.00. (Compl. ¶ 23.) Plaintiffs also allege that the NYDHR conducted two field visits to Fairfield, the second of which was performed in the company of Berger, Nobile, and Ford. (Compl. ¶ 25.) According to the amended complaint, the defendants informed the NYDHR that they would install lighting on both sides of the building at the driveways and fix the potholes, but had not done so by the time of plaintiffs' eviction in November 2008. (Compl. ¶ 25.) Plaintiffs also allege that defendants had an opportunity to provide a ramp leading from Reyes' doorway into the courtyard when the courtyard was being renovated, but failed to install such a ramp. (Compl. ¶ 27.)

On August 6, 2007, plaintiffs filed a Charge of Discrimination with the NYDHR against defendant Fairfield, alleging failure to provide reasonable accommodation based on plaintiff Joy Reyes' disability and unlawful discriminatory practices in relation to housing because of the disability. (Compl. ¶ 5.) Plaintiffs cross-filed the complaint with the United States Department of Housing and Urban Development ("HUD"), Fair Housing Assistance Program. (Compl. ¶ 5.) On November 14, 2007, the NYDHR rendered a finding of "probable cause" to support the

allegations in the Charge of Discrimination. (Compl. ¶ 6.)

Plaintiffs claim that in retaliation for the filing of the complaints of discrimination, Fairfield initiated eviction proceedings, falsely stating that Reyes was a holdover tenant. (Compl. ¶ 29.) On October 9, 2007, plaintiffs claim that Fairfield filed a Notice of Petition/Holdover against Reyes under Index No. 005410/2007 in First District Court of the County of Nassau, Hempstead, New York. (Compl. ¶ 31.) Plaintiffs further claim that at that time, Fairfield was aware that Reyes' lease period had not expired and a contract was in place for the period beginning July 1, 2007 and ending July 1, 2008, and Fairfield was in possession of plaintiffs' rental payment for the period sought in state court. (Compl. ¶¶ 32-33.)

## B. Procedural History

Plaintiffs filed an original complaint in this action *pro se* on January 7, 2008. An amended complaint was filed on November 26, 2008, after plaintiffs retained counsel.

Defendants moved to dismiss the complaint on February 9, 2009. Plaintiffs filed their opposition papers on March 30, 2009, and defendants replied on April 20, 2009. This matter is fully submitted.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.

2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. *See* 129 S. Ct. at 1937. The Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57).

III. Discussion

A. Fair Housing Amendments Act

1. Reasonable Accommodations

The Fair Housing Act was amended in 1988 to prohibit discrimination in housing against persons with disabilities. *See* 42 U.S.C. § 3604(f). "Prohibited handicap discrimination may take several forms, including (1) disparate treatment, i.e., intentional discrimination; (2) disparate impact, i.e., the discriminatory effect of a facially neutral practice or policy; (3) a refusal to permit 'reasonable modifications of existing premises'; (4) a 'refusal to make reasonable accommodations in rules, policies, practices, or services'; or (5) a failure to 'design and construct' handicap accessible buildings." *Keys Youth Servs., Inc. v. City of Olathe, Kan.*, 248 F.3d 1267, 1272-73 (10th Cir. 2001).

Here, plaintiffs allege that defendants have failed to provide reasonable accommodations for Joy's disability, in violation of 42 U.S.C. § 3604(f)(3)(B) (hereinafter, the "reasonable accommodations provision"). This statutory provision makes unlawful "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604 (f)(3)(B). With respect to this claim, defendants argue that the statute imposes no duty upon landlords or building owners to construct new facilities, features or elements at a tenant's request and renovations do not fall within the ambit of this provision. The Court agrees with defendants that wholly new construction or modifications of existing premises is not mandated by the reasonable accommodations provision of the FHAA, but because plaintiffs' allegations are not limited to such, the Court cannot conclude that the entirety of plaintiffs' claims under this provision are barred as a matter of law.

Specifically, the Court agrees with defendants that, to the extent that plaintiffs claim that defendants were obligated to undertake wholly new construction or modify existing facilities by replacing steps with ramps or widening doors, plaintiffs' claim fails under the plain language of section 3604(f)(3)(B). As defendants point out, Judge Rakoff addressed this precise question in *Rodriguez v. 551 West 157th St. Owners Corp.*, 992 F. Supp. 385 (S.D.N.Y. 1998):

> Plaintiffs contend that defendant's refusal to make the building entrance accessible to wheelchairs constitutes a failure to make a "reasonable accommodation" . . . . However, the plain language of the statute defines this requirement in terms of reasonable accommodations in "rules, policies, practices, or services," 42 U.S.C. § 3604(f)(3)(B) and, by contrast with § 3604(f)(2), notably fails to mention "facilities." To undertake to construct an entirely new facility in an existing building does not, under these circumstances, qualify as an "accommodation" of a "rule, policy, practice or service," when the term "construction" is nowhere to be found and the term "facility" is excluded. Indeed, plaintiffs cite no case, and the Court is aware of none, interpreting section 3604(f) to require a landlord to undertake wholly new construction.

*Id*. at 387 (footnote and internal citation omitted). The handful of other courts that have

since addressed this issue have reached the same conclusion. *See, e.g.*, *Fagundes v. Charter Builders, Inc.*, No. C07-1111, 2008 WL 268977, at *6 (N.D. Cal. Jan. 29, 2008) ("This Court agrees that a request for construction or repair is not actionable under subsection (B)."); *Thompons v. Westboro Condominium Assoc.*, No. 05-1893JLR, 2006 WL 2473464, at *4 (W.D. Wash. Aug. 25, 2006) ("The plain language of § 3604(f)(3)(B) excludes construction or improvements as a 'reasonable accommodation.' . . . Failing to construct a ramp is not a failure to accommodate in a rule, policy[,] practice, or service."); *cf. Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 336 (2d Cir. 1995) (upholding preliminary injunction in case involving defendants' policies regarding allocation of parking spaces); *United States v. Tanski*, No. 1:04 Civ. 714, 2007 WL 1017020, at *23 (N.D.N.Y. Mar. 30, 2007) (permitting claim to survive summary judgment where, *inter alia*, the alleged failure to make repairs to an *existing* ramp could result in liability for failure to reasonably accommodate). *But see Oxford House, Inc. v. Township of Cherry Hill*, 799 F. Supp. 450, 462 n.25 (D.N.J. 1992) (suggesting, by way of example, that where others are provided with "equal access" to a building in the form of a staircase, reasonable accommodation to those in wheelchairs may require the construction of a wheelchair ramp). This Court agrees with the majority of these other courts and holds, based upon the plain meaning of section 3604(f)(3)(B), that wholly new construction in or modifications of existing facilities is not required under this section.

The Court is furthermore not persuaded to reach a different conclusion by plaintiffs' argument that, in connection with the allegations that defendants failed to build ramps or otherwise accessible entrances in certain areas, defendants undertook independent renovation of those areas after they became aware of Joy's disability and still failed to renovate in a manner that accommodated their disabled resident. Specifically, plaintiffs allege that defendants renovated the courtyard and walkways, but chose not to install a ramp when they could have done so. (Compl. ¶¶ 26-27.) However, plaintiffs do not point to any legal authority, and the Court is not aware of any, suggesting that renovations or reconstruction may constitute an accommodation in rules, policies, practices, or services within the meaning of the FHAA and thereby fall within the ambit of the reasonable accommodations provision. As noted by the Second Circuit, "[t]he HUD regulations give two examples of when a reasonable accommodation would be required: the lifting of a no-pets rule to allow use of a seeing-eye dog; or the waiver of a first-come, first-serve policy on parking spots to accommodate the impaired mobility of a person suffering from multiple sclerosis." *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 301 (2d Cir. 1998) (citing 24 C.F.R. § 100.204(b)). In addition, those cases tangentially involving construction under this provision typically involve *policies* regarding zoning restrictions on construction and whether alterations of such policies are reasonable accommodations that are mandated by the statute, and not whether renovations or construction undertaken by private housing providers themselves constitute reasonable accommodations. *See id*. ("Many reported cases under § 3604(f)(3) involve developers' requests for variances of zoning ordinances that would allow the building of housing for handicapped persons.").[2] The aforementioned

---

[2] As another example, one court has held that the policy of a cooperative housing corporation in refusing to use its corporate funds to reasonably accommodate its disabled shareholders was a

cases are inapposite to this case, and thus the Court agrees with defendants that, to the extent that plaintiffs' claim of disability discrimination hinges on defendants' alleged failure to reconstruct or renovate certain areas in a fashion that accommodated Joy's disability, such claims are not actionable under the reasonable accommodations provision of the FHAA.

The Court's interpretation is also consistent with a reading of 42 U.S.C. § 3604(f)(3) as a whole. Subsection 3604(f)(3)(A) prohibits "a refusal to permit, *at the expense of the handicapped person*, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford

such person full enjoyment of the premises[.]" 42 U.S.C. § 3604(f)(3)(A) (emphasis added). "Modifications" is defined by the regulations as "any change to the public or common use areas of a building or any change to a dwelling unit." 24 C.F.R. § 100.201. Another subsection, § 3604(f)(3)(C), governs the design and construction requirements of covered multi-family dwellings for first occupancy after the date that is 30 months after September 13, 1988, a provision that is discussed in more detail *infra* and includes the requirements that "the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons" and that "all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs[.]" 42 U.S.C. § 3604(f)(3)(C)(i)-(ii). These subsections, read in conjunction with subsection 3604(f)(B), indicate that modifications of existing premises, which are governed by § 3604(f)(3)(A) if they are paid for by the disabled individual, are generally distinct from accommodations in a rule, policy, practice, or service as so stated in § 3604(f)(3)(B), which are also generally distinct from design and construction requirements for first occupancy buildings as governed by § 3604(f)(3)(C). Only such a reading is consistent with the canons of statutory construction that a statute be construed so that effect is given to all its provisions, so that no part will be rendered inoperative or superfluous, void or insignificant, and that when the legislature uses certain language in one part of the statute and different language in another, the court should assume that different meanings were intended. Although the analysis begins "with the text of the provision in question[,]" *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995), and the Court has already determined that the ordinary and plain meaning of the terms rule, policy, practice, or service do not

---

discriminatory practice. *See United Veterans Mut. Hous. No. 2 Corp. v. N.Y. City Comm'n on Human Rights*, 207 A.D.2d 551, 552 (N.Y. App. Div. 1994) ("[T]he petitioner's *policy* of refusing to expend corporate funds to construct, modify, maintain, or insure any improvements to the common grounds or other common areas of Bell Park Gardens to accommodate the needs of its residents with disabilities clearly violates . . . the Federal Fair Housing Act[.]") (emphasis added). However, in this case, plaintiffs are not shareholders or part-owners of the property, and plaintiffs have not alleged that they offered to contribute toward or pay for any of the requested accommodations. Indeed, if they had so alleged, the applicable provision would be 42 U.S.C. § 3604(f)(3)(A), which governs reasonable modifications to existing premises at the expense of a disabled individual. *See Hack v. Pres. and Fellows of Yale College*, 237 F.3d 81, 103 n.22 (2d Cir. 2000) ("Landlords are also obligated to permit reasonable modifications of the premises, although they need not pay for the alterations and certain conditions may be attached." (citing 42 U.S.C. § 3604(f)(3)(A))), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

encompass the installation of ramps or the widening of doorways, the Court finds that the text and structure of §3604(f)(3) as a whole also supports the same conclusion. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

However, plaintiffs allege that defendants failed to provide reasonable accommodations with respect to more than just the installation of ramps and the widening of doors. In particular, plaintiffs allege that the premises' driveways and parking lot were kept in disrepair, causing difficulties for Joy in her wheelchair. (*See* Compl. ¶ 16.) A failure to repair potholes in the driveways is plainly a practice or service that is actionable under the reasonable accommodations provision of the statute. Similarly, plaintiffs' allegations that defendants failed to provide accessible and properly designated parking spaces, (*see* Compl. ¶ 20), also support an actionable claim for reasonable accommodation under the FHA. *See Shapiro*, 51 F.3d at 335 ("[W]ithout a nearby parking space, [plaintiff] is subjected to a risk of injury, infection, and humiliation each time she leaves her dwelling and each time she returns home. We agree with the district court that, under these circumstances, nearby parking is a substantial factor in [plaintiff's] 'use and enjoyment' of her dwelling."); *Sporn v. Ocean Colony Condominium Ass'n*, 173 F. Supp. 2d 244, 249 (D.N.J. 2001) ("It has been recognized on numerous occasions that the FHA may, in certain cases, entitle a handicapped tenant to a reserved parking space adjacent to the tenant's dwelling.") (collecting cases).

Moreover, "if the reasonable accommodations provision is triggered, a defendant can be required to incur reasonable costs to accommodate a plaintiff's handicap, provided such accommodations *do not* pose an *undue hardship* or a *substantial burden*." *Salute*, 136 F.3d at 300 (internal quotation marks omitted) (emphasis in original). In other words, a defendant must incur reasonable costs and take modest, affirmative steps to accommodate the disabled individual, as long as the accommodations sought do not pose an undue hardship or a substantial burden. *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003) (citations omitted). Thus, whether or not defendants may have reasonably accommodated plaintiffs by repairing the driveway and parking lot areas, or by providing plaintiffs with an accessible and designated parking space, cannot be resolved on a motion to dismiss under the circumstances of this case. *See Dinapoli v. DPA Wallace Ave II, LLC*, No. 07 Civ. 1409 (PAC), 2009 WL 755354, at *5 (S.D.N.Y. Mar. 23, 2009) ("Courts conduct a fact-specific analysis of whether an accommodation was required, balancing the benefits to the plaintiff against the burdens to the defendant.").

Accordingly, the Court finds that plaintiffs' claims pursuant to the reasonable accommodations provision of the FHAA, to the extent that they are based on the installation of new ramps or the widening of doors, fail as a matter of law. However, to the extent that plaintiffs' claims are based on defendants' alleged (1) practice of keeping the driveways and parking lot in a state of disrepair and (2) policy regarding parking spaces, such claims survive dismissal.

## 2. Construction and Design

Although plaintiffs do not specifically allege that defendants have failed to design or construct the premises in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C), the Court has considered defendants' possible liability under this statutory provision in an abundance of caution, particularly because defendants base substantial portions of their arguments with respect to § 3604(f)(3)(B) on an analysis of § 3604(f)(3)(C), which is a distinct subsection and, as the Court determines, does not apply to the case at hand.

First, defendants correctly point out that by the terms of this subsection, only those multi-family dwellings constructed for first occupancy after March 13, 1991 are subject to its requirements. *See Am. Disabled for Attendant Programs Today v. U.S. Dep't of Hous. and Urban Dev.*, 170 F.3d 381, 383 (3d Cir. 1999) ("The FHAA contains general design requirements for all multi-family housing with four or more units constructed after March 13, 1991, regardless of whether the housing is federally funded."); *Equal Rights Ctr. v. Post Properties, Inc.*, 522 F. Supp. 2d 1, 6 (D.D.C. 2007) ("The statute further defines 'discrimination' to include the 'failure to design and construct covered multifamily dwellings' built for first occupancy after March 13, 1991.") Defendants claim that the premises here were constructed for first occupancy well before 1991, and plaintiffs do not allege otherwise.

In addition, just as defendants' alleged failure to reconstruct certain areas of the building to accommodate plaintiffs is not actionable under the reasonable accommodations provision, as determined *supra*, the Court also finds that these allegations are not actionable under § 3604(f)(3)(C). The Court's own research has yielded no case suggesting that a failure to renovate or reconstruct a pre-1991 facility in accordance with § 3604(f)(3)(C) constitutes grounds for liability under that subsection. *Cf. Sporn,* 173 F. Supp. 2d at 249 (assuming that the subsection's requirements relating to the design and construction of "covered multifamily dwellings for first occupancy" applied to the alleged renovations but acknowledging that there is no legal authority cited for that proposition). Such an interpretation of section 3604(f)(3)(C) is inconsistent with the plain language of the statute and, thus, the Court holds that section 3604(f)(3)(C) is not made applicable by renovations undertaken in an older building that take place after March 1991. Therefore, any claim under section 3604(f)(3)(C) fails as a matter of law in this case.

Despite this, plaintiffs further counter that, as an "exception to the 1991 requirement," defendants are still liable under the requirements of Section 504 of the Rehabilitation Act because Fairfield receives federal subsidies, namely, Section 8 housing vouchers.[3] (Pl.'s Mem., at 5.) Section 504 of the Rehabilitation Act makes it unlawful to

---

[3] "HUD is the federal funding agency overseeing the Section 8 housing program. Under that program, HUD distributes funds through local public housing authorities ('PHAs') in the form of vouchers to low-income families to help them rent apartments through their local PHA. Landlord participation in this Section 8 program is voluntary, 24 C.F.R. § 982.302(b), but HUD directs PHAs to encourage landlords with handicapped-accessible units to participate in the program as part of their effort to encourage landlord participation generally." *Bennett v. N.Y.C. Hous. Auth.*, 248 F. Supp. 2d 166, 168-69 (E.D.N.Y. 2002) (citing 42 U.S.C. § 1437f(o), 24 C.F.R. §§ 8.28(a)(2), 982.1(a)-(b)).

deny a disabled person the benefits of a program or activity receiving federal assistance by reason of his or her disability. *See* 29 U.S.C. § 794(a). Defendants argue that Fairfield's acceptance of Section 8 vouchers does not, by itself, constitute receipt of federal financial assistance. The Court agrees.

As an initial matter, the amended complaint does not assert any claims for relief pursuant to the Rehabilitation Act, and such a claim is only included in plaintiffs' memorandum opposing defendants' motion. "A party is not entitled to amend [their] complaint through [their] memoranda," and, therefore, the Court may decline to consider plaintiffs' Rehabilitation Act claim on this basis alone. *Butvin v. DoubleClick, Inc.*, No. 99 Civ. 4727 (JFK), 2000 WL 827673, at *13 (S.D.N.Y. June 26, 2000) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (declining to address merits of claim that "does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss")); *see, e.g.*, *Goplen v. 51job, Inc*., 453 F. Supp. 2d 759, 765 n.4 (S.D.N.Y. 2006) ("[P]laintiffs cannot amend their complaint through a legal memorandum."); *Reading Intern., Inc. v. Oaktree Cap. Mgmt. LLC*, 317 F. Supp. 2d 301, 318 n.9 (S.D.N.Y. 2003) ("Absent the filing of an amended complaint that properly pleads the components of [the asserted claim], the Court will not consider this allegation."); *Hernandez v. Wells*, No. 01 Civ. 4376 (MBM), 2003 WL 22771982, at *3 (S.D.N.Y. Nov. 24, 2003) (declining to consider claim not raised in complaint but argued in the parties' moving papers); *Farrell v. Child Welfare Admin.*, 77 F. Supp. 2d 329, 331 n.4 (S.D.N.Y. 1999) (same).

Even assuming *arguendo* that such a claim had been pled, however, it would fail as a matter of law if its sole basis is that Fairfield accepts tenants with Section 8 housing vouchers. In this respect, the reasoning of Magistrate Judge Wall in another case is entirely on point and is persuasive:

> Department of Housing and Urban Development ("HUD") has promulgated regulations to effectuate § 504 of the Rehabilitation Act. One such regulation provides that an entity or person who receives housing assistance payments under a housing assistance payments program or a voucher program is not a "recipient" of federal financial assistance by virtue of receipt of such payments. *See* 24 C.F.R. § 8.3. Plaintiffs do not address this regulation in their papers, but rather generally suggest that receipt of Section 8 vouchers should be considered federal financial assistance since that type of aid "is an integral part of the federal housing scheme." Pls' Mem. at 21. They do not refute the plain meaning of the regulation, nor do they provide any case support for their arguments. The court finds that defendants have not received federal financial assistance and as such, plaintiffs cannot establish a violation of § 504.

*Echeverria v. Krystie Manor, LP*, No. 07 Civ. 1369 (WDW), 2009 WL 857629, at *7 (E.D.N.Y. Mar. 30, 2009) (footnote omitted); *see also* 24 C.F.R. § 8.3 ("An entity or person receiving housing assistance payments from a recipient on behalf of eligible families under a housing assistance payments program or a voucher program is not a recipient or subrecipient merely by virtue of receipt of such

payments.").[4]  Accordingly, even assuming that the amended complaint is construed to assert a cause of action under Section 504 of the Rehabilitation Act, that claim would not survive dismissal.[5]

### 3. Retaliation under the FHAA

Plaintiff's second cause of action arises under 42 U.S.C. § 3617, which makes it unlawful to

---

[4]  As addressed in a footnote in *Echeverria*, and as pointed out by defendants, this question is also answered on the HUD website.  *See id.* at *7 n.8. In answer to the question "[w]ho are 'recipients of federal financial assistance'?" the site offers, in part, the following: "a private landlord who accepts Section 8 tenant-based vouchers in payment for rent from a low income individual is not a recipient of federal financial assistance." *See* Fair Housing FAQ's from HUD's website, http://www.hud.gov/offices/fheo/disabilities/sect504faq.cfm.

[5]  Similarly, plaintiffs' argument that defendants are liable pursuant to the Americans with Disabilities Act ("ADA") Title III, 42 U.S.C. § 12183, also fails as insufficiently pled – since no claim under the ADA is a part of the amended complaint – and as a matter of law, in any event. In order to state a claim, plaintiffs must assert that 1) they are disabled within the meaning of the ADA, 2) defendants own, lease, or operate a place of public accommodation, and 3) defendants discriminated against the plaintiff within the meaning of the ADA.  *See Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). Defendants do not operate a place of public accommodation, however, based on the allegations in the complaint.  "Places of public accommodation" are defined in 42 U.S.C. § 12181(7) as facilities owned by private entities affecting commerce, which are considered public accommodations for purposes of the ADA, including, *inter alia*: an inn, hotel, motel, or other place of lodging; a restaurant, bar, or other establishment serving food or drink; a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment; an auditorium, convention center, lecture hall, or other place of public gathering; a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment; a terminal, depot, or other station used for specified public transportation; a museum, library, gallery, or other place of public display or collection; a park, zoo, amusement park, or other place of recreation; or a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education.  *See* 42 U.S.C. § 12181(7).  Thus, receipt of Section 8 housing vouchers is an insufficient basis upon which to deem the premises – a private, residential apartment complex – a place of public accommodation.  *See Bobrowsky v. Curran*, 333 F. Supp. 2d 159, 163 (S.D.N.Y. 2004) ("There is no question that the property at issue in the case at bar (a) is privately owned, (b) does not affect commerce, and (c) does not fall into any of the categories set forth in § 12182."); *see also Schiavo ex. rel. Schindler v. Schiavo*, 403 F.3d 1289, 1293 n.2 (11th Cir. 2005) (noting that the "Supreme Court has repeatedly held . . . that federal money does not transform private persons or entities into state actors"); *cf. No Barriers, Inc. v. BRH Texas GP, L.L.C.*, No. 3:01-CV-344-R, 2001 WL 896924, at *3 (N.D. Tex. Aug. 2, 2001) (finding that the *leasing office* within an apartment complex constituted a "retail establishment" within the meaning of 42 U.S.C. § 12181(7)(E), while the rest of the building was exempt from ADA requirements).  Finally, plaintiffs have not provided any legal authority or legal basis for bringing a claim based on alleged violations of New York State Building Code Section 101, which, in any event, was also not pled in the amended complaint and, contrary to plaintiffs' assertion, is not "triggered" as an "affirmative requirement" by the language of 42 U.S.C. § 3604(f)(8).  (Pl.'s Mem., at 8-9.)  Instead, section 3604(f)(8) merely states that nothing in that subchapter shall be construed to invalidate or limit any law of a state that requires certain design or construction on behalf of disabled persons.  *See* 42 U.S.C. § 3604(f)(8).  Thus, plaintiffs must still establish an independent basis for any claim alleging violations of the New York State Building Code.

coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [42 U.S.C. §§ 3603, 3604, 3605, or 3606].

42 U.S.C. § 3617. The statute "safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Act rights."[6] *Frazier v. Rominger*, 27 F.3d 828, 833 (2d Cir. 1994).

Defendants argue that this claim should be dismissed based on the stipulation of settlement reached in the state court eviction proceedings. Specifically, defendants assert that, even accepting the allegations in the complaint as true, plaintiffs cannot establish a causal connection between the protected activity and adverse action as a matter of law

because the stipulation of settlement in the holdover proceeding, in which plaintiff Reyes purportedly agreed to a judgment of possession in favor of the owner with a stay of the warrant of eviction through June 30, 2008, "completely resolved all factual issues with regard to her status as a holdover tenant."[7] (Def.'s Mem., at 10-11.)

The *McDonnell Douglas* burden-shifting rules apply to claims of retaliation pursuant to this provision;[8] however, no pleading of a *prima facie* case is required to withstand a motion to dismiss, since *McDonnell Douglas* is an evidentiary standard and not a pleading requirement. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Thus, despite

---

[6] "Section 3617 may be read as making any violation dependent on an underlying substantive violation of §§ 3603 through 3606, however, courts within this circuit have held that § 3617 can, at times, serve as a separate basis for an FHA claim even where there is no predicate for liability under any of the statute's specifically referenced enumerated substantive provisions." *Lachira v. Sutton*, No. 3:05 Civ. 1585 (PCD), 2007 WL 1346913, at *17 (D. Conn. May 7, 2007) (footnote omitted and collecting cases); *see also Marks v. BLDG Management Co., Inc.*, No. 99 Civ. 5733 (THK), 2002 WL 764473, at *10 (S.D.N.Y. Apr. 26, 2002) ("[T]his Court finds that the fact that Plaintiff failed to establish a violation of her right, under § 3604, to reasonable accommodation of her disability, does not immunize Defendants from liability under § 3617."). Thus, plaintiffs may pursue this claim regardless of whether or not their § 3604 claims proceed.

[7] As a threshold matter, plaintiffs object that any reliance on the exhibits submitted by defendants in support of their motion is inappropriate on a motion to dismiss. (*See* Pl.'s Mem., at 2-4.) However, as stated *supra*, the Court is permitted to take judicial notice of filings in related proceedings on a motion to dismiss, without converting the motion to one for summary judgment. The Court is aware that some of these documents are "heavily in dispute" (Pl.'s Mem., at 4), but they are only considered for the purposes of establishing the fact of the filings and proceeding, and not for the truth of the matters asserted therein. *See Kramer v. Time Warner, Inc.*, 937 F.2d at 774.

[8] In accordance with the *McDonnell Douglas* framework, in order for plaintiffs to establish a *prima facie* case of retaliation, they must show "that [they were] engaged in protected activity, that the [defendants were] aware of this activity, that the [defendants] took adverse action against the plaintiff[s], and a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002) (internal quotations and citations omitted).

defendants' argument to the contrary,[9] plaintiffs do not need to allege specific evidence that satisfies the elements of a *prima facie* case of retaliation at this stage of the proceedings. *See id.* at 511 ("under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case.").

Instead, all that is relevant on a motion to dismiss in a discrimination case is whether plaintiffs have provided adequate notice of the claim under Rule 8(a) of the Federal Rules of Civil Procedure, with some factual allegations that satisfy the "plausibility" standard set forth by *Twombly* and *Iqbal*. *See Iqbal*, 129 S. Ct. at 1953. Plaintiffs have certainly satisfied that standard with respect to the discrimination and retaliation claims based on Joy's disability. Even if allegations specifically supporting the causal connection were required at this stage, however, the Court would find the amended complaint's allegations sufficient. "'The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'" *RECAP*, 294 F.3d at 54 (quotation omitted). The adverse action need not occur immediately following the protected activity, and there is no bright line outer limit to the time; the inquiry is whether a reasonable juror could conclude that the action was taken because of the protected activity. *See id.* (quotation omitted). Here, plaintiffs allege that LIHS sent its letter to defendants regarding the reasonable accommodations on July 20, 2007, Reyes filed her fair housing complaint on August 6, 2007, the NYSDHR conducted a second field visit on September 17, 2009, and on October 9, 2007, defendants initiated the eviction proceedings. (Compl. ¶¶ 5, 15-17, 25, 31.) Such allegations are sufficient to survive a motion to dismiss on the issue of causation.

Moreover, defendants' argument that the stipulation executed in the eviction proceedings in state court necessarily defeats the allegation that defendants initiated the eviction proceedings as a retaliatory measure is misplaced. The Court finds that even considering the terms of the stipulation of settlement and assuming that Reyes did admit to her status as a holdover tenant, and even if *res judicata*, collateral estoppel, and/or *Rooker-Feldman* bar review by this Court of the warrant of eviction issued pursuant to the state court judgment, as discussed *infra*, Reyes' purported concession to being a holdover tenant does not mean that plaintiffs cannot establish as a matter of law that a retaliatory motive played a part in the holdover proceeding. Indeed, whether or not there was a valid basis for the eviction proceeding, while relevant to the issue of discriminatory or retaliatory intent, is not determinative. Consequently, on a motion for summary judgment at a later stage of the proceedings in this case, defendants may argue that they had a valid, nonretaliatory motive for instituting the eviction proceedings. *See, e.g.*, *RECAP*, 294 F.3d at 54 (stating that if a plaintiff establishes a *prima facie* case, the defendant has the burden to produce a legitimate non-retaliatory reason for its action). Even then, however, plaintiffs have the opportunity to show that the defendants' proffered reason is mere pretext for a retaliatory action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.

---

[9] Defendants rely on *Lynn v. Village of Pomona*, 212 Fed. Appx. 38, 41-42 (2d Cir. Jan. 9, 2007) for support that "[t]he Second Circuit has held that a failure to show a causal connection between the alleged protected activity and adverse action is a failure to state a prima facie case of retaliation pursuant to 42 U.S.C. § 3617." (Def.'s Mem., at 10.) However, *Lynn* was an appeal of a decision on a summary judgment motion, not a motion to dismiss.

133, 143 (2000). In any event, these are not proper considerations on a motion to dismiss and should be left for a later stage of the proceedings.[10]

---

[10] In reaching this decision, the Court also concludes that an eviction proceeding could constitute an adverse action under section 3617. *See, e.g.*, *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) ("Although the retaliatory conduct in this case involved only threats of eviction, which were never carried out, we find [plaintiff] sufficiently alleged an adverse action, at least at this early pleading stage." (citing *Harris v. Itzhaki*, 183 F.3d 1043, 1050-52 (9th Cir. 1999)); *Sandy Hill Apartments v. Kudawoo*, Civil No. 05-2327 (PAM/JSM), 2006 WL 2974305, at *3 (D. Minn. Oct. 16, 2006) (concluding, on a summary judgment motion, that the plaintiff had failed to establish a *prima facie* case of retaliation based upon her eviction, which the court considered an adverse action). "Though many of the reported cases under § 3617 involve allegations of force or violence, such a showing is not necessary to prove a violation. The plain language of the statute supports this application, as do numerous cases upholding claims based on wide-ranging conduct in opposition to protected activity." *Marks*, 2002 WL 764473, at *11 (citations omitted and collecting cases). Instead, the "basic principle" is "that in order for an alleged adverse action to constitute unlawful retaliation, the action must have some materially adverse effect on the plaintiff[,]" *id.*, at *13, which plaintiffs have sufficiently alleged in this case. Moreover, although plaintiffs' memorandum in opposition makes reference to additional factual allegations of retaliatory activity that were included in the original, but not amended, complaint, the Court notes that 1) it may not consider such allegations in light of the amended complaint's having superseded the original complaint, *see Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 260 (2d Cir. 2002), and 2) in any event, such additional allegations are unnecessary because the amended complaint makes clear that the eviction proceedings were allegedly retaliatory in nature.

## B. Section 1982

"To state a claim under [§ 1982], plaintiff must allege facts in support of the following elements: (1) [she is a] member of a racial minority; (2) defendant's intent to discriminate on the basis of [her] race, (3) the discrimination concerned one or more activities enumerated in [section 1982], such as . . . the purchase and lease of property."[11] *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 700 (S.D.N.Y. 1996).

Defendants argue here that the amended complaint's "'naked assertion' of racial discrimination without any facts whatsoever is insufficient to state a claim for relief. Plaintiff has not alleged even one instance of fact which would give rise even to a question of racial discriminatory intent." (Def.'s Mem., at 19.) The Court agrees, but grants plaintiffs the opportunity to replead, based on the factual allegations set forth in plaintiffs' original complaint.

As an initial matter, it is well settled that there is no heightened pleading requirement for civil rights complaints alleging racial animus. *See Swierkiewicz*, 534 U.S. at 510 (rejecting the concept that there is a heightened pleading standard and holding that the survival of a complaint in an employment discrimination case does not rest on whether it contains specific facts establishing a *prima facie* case under *McDonnell Douglas*); *see also Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (applying *Swierkiewicz* to FHA claims); *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67,

---

[11] The statute provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by the white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

71-72 (2d Cir. 2006) (applying *Swierkiewicz* holding to retaliation claims); *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying *Swierkiewicz* holding to discrimination claims under Title VII and ADEA claims). The Second Circuit "has found such claims sufficiently pleaded when the complaint stated simply that plaintiffs 'are African-Americans, describe[d] defendants' actions in detail, and allege[d] that defendants selected [plaintiffs] for maltreatment 'solely because of their color.' We have upheld the vitality of this principle since *Twombly*." *Boykin*, 521 F.3d at 215 (citing *Phillip*, 316 F.3d at 298). Indeed, the Second Circuit has emphasized that the Federal Rules "set forth a pleading standard under which a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz*, 445 F.3d at 591. Such a pleading "will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (internal quotation omitted). "A clear statement from the plaintiff alleging discrimination by the defendant is sufficient to achieve these goals." *Sanchez v. Thompson*, 252 F.R.D. 136, 140 (E.D.N.Y. 2008); *see also Boykin*, 521 F.3d at 213 ("Boykin's complaint need only satisfy Rule 8(a)'s standard of a 'short and plain statement of the claim showing that [she] is entitled to relief.'") (citing Fed. R. Civ. P. 8(a)(2)); *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961) (holding that a complaint stating "that defendants have in a willful and malicious manner discriminated against plaintiff" provided sufficient notice of the discrimination claim).

The Supreme Court has recently clarified, however, that even against this liberal pleading standard, conclusory assertions are not entitled to the assumption of truth, and factual allegations must plausibly support the reasonable inference that plaintiffs are entitled to relief. *See Iqbal*, 129 S. Ct. at 1951. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

Here, the conclusory race-based allegations contained in the amended complaint, taken as true, do not establish plausibility on its face and are insufficient to satisfy even the liberal pleading standards under Rule 8(a) and *Iqbal*. The amended complaint's factual allegations make no mention of plaintiffs' race (other than stating that plaintiffs are African-American) and repeatedly emphasize that defendants denied them certain accommodations based on Joy's disability and then retaliated against plaintiffs because of Reyes' NYDHR / HUD complaint – also based only on disability discrimination – and the NYDHR's resultant investigation. Even liberally construed, plaintiffs' complaint fails to allege any facts relating to race, other than a conclusory statement that defendants retaliated and discriminated against plaintiffs based on their being African-American, which is insufficient under *Iqbal*. No identification of particular events or facts underlying the race-based discrimination claims is set forth in the amended complaint, and thus the claim is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Yusuf v. Vassar College*, 35 F.3d 709, 713-14 (2d Cir. 1994) (dismissing claims based on plaintiff's conclusory assertions of race and gender discrimination); *see also Wei Hong Zheng v. Wong*, No. 07 Civ. 4768 (FB) (JO),

2009 WL 2601313, at \*7 (E.D.N.Y. Aug. 24, 2009) ("Under the standard recently articulated by the Supreme Court, a plaintiff must plead sufficient 'factual content [to allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Chan fails to satisfy that standard with respect to her sex discrimination claim, which, accordingly, must be dismissed.") (quoting *Iqbal*, 129 S. Ct. at 1949); *Ercole v. U.S. Dep't of Transp.*, No. 07 Civ. 2049 (JFB), 2008 WL 4190799, at \*6-7 (E.D.N.Y. Sept. 10, 2008) (finding *pro se* complaint did not meet Rule 12(b)(6) pleading standards where complaint had no factual allegations to support vague and conclusory assertion that plaintiff was subject to unlawful discrimination); *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 717-18 (D. Conn. 2003) (dismissing complaint based in part on the fact that no factual allegations were provided in support of discrimination claim).

Plaintiffs attempt to remedy their pleading defect by pointing to various allegations contained in the original, and not amended, complaint. In particular, plaintiffs allege that an on-site maintenance employee named Richie, who was an alleged agent of defendants and given key access to plaintiffs' apartment, called plaintiff Reyes a n\*\*\*\*\* and began a campaign of racial harassment beginning on January 4, 2008. (*See* Pl.'s Mem., at 12.) However, the original complaint has been superseded by the amended complaint, and those factual allegations cannot be considered by the Court on this motion. *See Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). In an abundance of caution, however, the Court

grants plaintiffs leave to submit a second amended complaint to address this pleading defect. *See, e.g., Ercole*, 2008 WL 4190799, at \*7.

## C. State Law Claims

### 1. NYSHRL

The language of NYSHRL, Executive Law § 296(18) parallels that of the FHAA, 42 U.S.C. § 3604(f)(3)(B). Therefore, plaintiffs' claims under the NYSHRL survive dismissal to the extent that the FHAA claim does, as set forth *supra*.[12] *See Barkley v. Olympia Mortgage Co.*, No. 04 Civ. 875, 2007 U.S. Dist. LEXIS 61940, at \*56-57 (E.D.N.Y. Aug. 22, 2007) ("the standards relevant to [the NYSHRL] claims parallel those applicable under the Fair Housing Act"). The same standard as the FHAA is also applied to retaliation complaints under the NYSHRL, and thus, that claim is also permitted to proceed. *See Elmowitz v. Executive Towers at Lido, LLC*, 571 F. Supp. 2d 370, 376 (E.D.N.Y. 2008); *Okolie v. Paikoff*, 589 F. Supp. 2d 204, 211 (E.D.N.Y. 2008).

### 2. IIED

In order to assert a valid claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must demonstrate "(1) extreme and outrageous

---

[12] The amended complaint further alleges that defendants interfered with plaintiffs' civil rights based upon disability, in violation of Executive Law § 291(2). (*See* Compl. ¶ 53.) However, such a claim fails as a matter of law because disability is not the basis of a protected class by the terms of that statute. *See* N.Y. Executive Law § 291(2). To the extent that plaintiffs assert a claim for race discrimination pursuant to this provision, such a claim is dismissed with leave to replead, consistent with the discussion regarding the Section 1982 claim *supra*.

conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of N.Y.*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Id.* (citation omitted). The conduct alleged must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quoting *Fischer v. Maloney*, 373 N.E.2d 1215, 1217 (N.Y. 1978)). "New York courts do not allow IIED claims where 'the conduct complained of falls well within the ambit of other traditional tort liability.'" *McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 335 (E.D.N.Y. 2002) (quoting *Lian v. Sedgwick James, Inc.*, 992 F. Supp. 644, 651 (S.D.N.Y. 1998)). As a result, "IIED claims that are duplicative of other tort claims should therefore be dismissed." *Id.* (citing *Lian*, 992 F. Supp. at 651). Moreover, "New York courts have been very strict in applying these principles." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985); *see also Elmowitz*, 571 F. Supp. 2d at 378 ("Very few claims satisfy the extreme and outrageous requirement of a IIED claim. In fact, none of the IIED claims considered by the New York Court of Appeals have survived because the conduct was not sufficiently outrageous.") (citation omitted).

Even construing the facts most favorably to plaintiffs, based upon defendants' alleged conduct in failing to provide the requested accommodations and bringing retaliatory eviction proceedings, the Court concludes that the IIED claim must be dismissed based upon the current complaint for failure to allege any specific conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency. *See, e.g., Martin*, 762 F.2d at 220 (holding that allegations of being polygraphed on the basis of race is not outrageous per se "despite the unacceptability of racial discrimination in civilized society"); *Elmowitz*, 571 F. Supp. 2d at 378 (dismissing IIED claim in lawsuit alleging housing discrimination based on disability, where plaintiff alleged that while defendant inspected his apartment and took multiple pictures of the unit, refusing to leave when asked to do so by plaintiff, defendant took photographs of his person, at times placing the camera "in very close proximity to [his] face," taunted him in public by shouting derogatory remarks, and "hit [him] multiple times with her office telephone[,]" and, where after plaintiff had filed a complaint with HUD, defendants then refused to extend plaintiff's lease); *Murphy v. Am. Home Products Corp.*, 58 N.Y.2d 293, 303 (N.Y. 1983) (affirming dismissal of a claim as "fall[ing] far short of [IIED's] strict standard" that alleged that plaintiff was transferred and demoted for reporting fraud at his company, discharged and ordered to leave immediately, forcibly and publicly escorted from the building by guards when he returned the next day to pick up his belongings, and ordered out of the building two weeks later when he came back, as instructed, to pick up his possessions, which were then dumped in the street.); *Ruggiero v. Contemporary Shells, Inc.*, 160 A.D.2d 986, 987 (N.Y. App Div. 1990) (dismissing claim where the defendant allegedly "harassed and ultimately discharged the plaintiff due to her pregnancy").

Again, to counter this, plaintiffs point to several allegations that were only contained in the original complaint. (*See* Pl.'s Mem, at 15.) Specifically, plaintiffs argue that these factual allegations, taken as true, establish that

defendants intentionally turned off the heat and power to plaintiffs' unit, refused to make habitability repairs to the unit, allowed sewage to back up through the unit, stalked plaintiffs in the parking lot, and screamed racial epithets at Reyes in front of Joy and called them other epithets. (*See* Pl.'s Mem., at 15.) Because the Court cannot determine, at this early juncture, that an amendment of the pleadings to contain those allegations would be futile, *see, e.g.*, *Bunker v. Testa*, 234 A.D.2d 1004, 1004 (N.Y. App. Div. 1996) (refusing to dismiss claim where the defendant allegedly yelled and gestured obscenely at plaintiff, followed her home, refused to leave the premises, followed her children and family around, and told her that he knew where the children went to school and when they got out of school), the Court grants plaintiffs leave to include these allegations in a second amended complaint.[13]

### 3. Breach of Contract, Breach of Implied Duty of Good Faith and Fair Dealing, and Unlawful Eviction

Defendants next argue that the doctrines of *Rooker-Feldman*, collateral estoppel, and *res judicata* bar plaintiffs' claims of retaliation, unlawful eviction, breach of contract, and breach of the implied duty of good faith and fair dealing, as a result of the state court judgment authorizing plaintiffs' eviction from the premises, which was based on a stipulation of settlement signed between Reyes and the fee owner of the premises. For the reasons stated below, the Court finds, at this stage of the proceedings, that only the unlawful eviction claim is barred by *Rooker-Feldman*, collateral estoppel, and *res judicata*.

---

[13]  Defendants further argue that plaintiffs have done nothing more than recite the remaining three elements of a IIED claim, but the Court need not address this issue.

### a. *Rooker-Feldman*

The *Rooker-Feldman* doctrine arises from two decisions issued by the United States Supreme Court, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and stands for the proposition that "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 296 (1970); *accord Hoblock v. Albany Cty. Bd. of Elecs.*, 422 F.3d 77, 84 (2d Cir. 2005) ("[F]ederal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments."). Though this doctrine was once improperly equated with that of *res judicata*, *see Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 199-200 (2d Cir. 1996), the Supreme Court has clarified that *Rooker-Feldman* is jurisdictional in nature, whereas *res judicata* deals with preclusion. *See Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter. *See* Fed. Rule Civ. Proc. 8(c) (listing res judicata as an affirmative defense).").

In *Hoblock*, the Second Circuit rigorously re-examined the *Rooker-Feldman* doctrine in light of the Supreme Court's decision in *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). *See Hoblock*, 422 F.3d at 83. The Second Circuit noted that *Exxon Mobile* had reduced the expanse of the *Rooker-Feldman* doctrine, "holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobile*, 544 U.S. at 284). Thus, the Second Circuit

delineated four requirements for the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 85 (internal citations and quotations omitted).

Plaintiffs' unlawful eviction claim pursuant to New York R.P.A.P.L § 853 invites this Court to "review and reject[ ]" a state court judgment and runs afoul of the jurisdictional limits set by the United States Supreme Court under the *Rooker-Feldman* doctrine. Therefore, the unlawful eviction claim is barred by *Rooker-Feldman*. Specifically, the Court determines that the requirements for the application of *Rooker-Feldman* are met with respect to that claim, as set forth below.[14]

As previously stated, the two substantive requirements of *Rooker-Feldman* are: (1) the federal plaintiff must complain of injury from a state-court judgment; and (2) the federal plaintiff must seek federal court review and rejection of the state court judgment. *See Hoblock*, 422 F.3d at 85. These substantive requirements support the principle, expressed in 28 U.S.C. § 1257, that within the federal judicial system, only the United States Supreme Court may review state court decisions. *See id.* "[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Hoblock*, 422 F.3d at 88. Here, in the unlawful eviction claim, plaintiffs complain of injuries caused by the state court judgment, namely, the plaintiffs' eviction from their apartment unit.[15] As a result, it is also apparent that the unlawful eviction claim seeks federal court review and rejection of the state court judgment entered on June 11, 2008, which granted a judgment of possession in favor of the owner and a temporary stay of the warrant of eviction. Accordingly, the substantive requirements of the doctrine are satisfied.

With respect to the "procedural" requirements of *Hoblock*, plaintiffs first contend that they were not state court losers because the action was not adjudicated on the merits, but instead concluded as a result of the settlement agreement. However, as an initial matter, a settlement agreement may constitute a state court judgment for purposes of *Rooker-Feldman*. *See Greene*, 438 F. Supp. 2d at 119 ("[C]ourts have treated settlement agreements as final judgments for the purpose

---

[14] In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). Thus, with respect to the applicability of the *Rooker-Feldman* doctrine, the Court may look to the exhibits attached to the defendants' motion papers, including the stipulation of settlement and state court orders.

[15] N.Y. R.P.A.P.L § 853 provides that "[i]f a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer."

of the *Rooker-Feldman* doctrine.") (citing *Allianz Ins. Co. v. Cavagnuolo*, No. 03 Civ. 1636 (HB), 2004 WL 1048243, at *6 (S.D.N.Y. May 7, 2004)); *see also Lombard v. Lombard*, No. 00 Civ. 6703, 2001 WL 548725, at *4 (S.D.N.Y. May 23, 2001) (applying *Rooker-Feldman* to a challenge to a stipulation of settlement executed in probate proceeding in surrogate's court). Furthermore, in order to satisfy the first prong of the doctrine, "rather than putting the court in the position of evaluating subjectively whether a settlement should be considered a loss, it seems sufficient for plaintiffs to allege that the court-approved settlement[] somehow violated their rights." *Green v. City of N.Y.*, 438 F. Supp. 2d 111, 119 (E.D.N.Y. 2006); *accord Wittich v. Wittich,* No. 06 Civ. 1635 (JFB) (WDW), 2006 WL 3437407, at *3 (E.D.N.Y. Nov. 29, 2006). Thus, for purposes of *Rooker-Feldman*, because plaintiffs now seek to effectively set aside the judgment authorizing the warrant of eviction, based upon the stipulation of settlement, on the basis that such violated plaintiffs' rights, the Court deems plaintiffs a losing party in a state court action for purposes of this procedural requirement of *Rooker-Feldman*.

The separate issue here is whether the state court judgment was rendered prior to the initiation of this action. The stipulation of settlement in the state court case was signed on January 30, 2008. The judgment was entered on June 11, 2008. The original complaint in this federal action was filed on January 7, 2008, and the amended complaint was filed on November 26, 2008. Regardless of whether the state court judgment for purposes of this analysis is considered to be January 30, 2008 or June 11, 2008, the original complaint was filed prior to either date, and the amended complaint was filed subsequent to either date. Even though the filing of the original complaint commenced

this proceeding prior to the judgment in state court, it is clear from a review of the original complaint and the amended complaint that the unlawful eviction claim was only brought in the amended complaint, which was subsequent to the state court judgment. Thus, this claim is nonetheless barred by the doctrine. Instructive here is the Second Circuit's guidance in *Hoblock*:

> Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear. This formula dovetails with the *Rooker-Feldman* requirement about timing that we have termed "procedural," *i.e.*, the requirement that the federal suit be initiated after the challenged state judgment. If federal suit cannot be barred by *Rooker-Feldman* unless they complain of injuries produced by state-court judgments, it follows that no federal suit that precedes a state-court judgment will be barred; the injury such federal suit seeks to remedy cannot have been produced by a state-court judgment that did not exist at the federal suit's inception.

422 F.3d at 88. The language of *Hoblock* suggests that, under the circumstances of this case, because plaintiffs did not complain of the injuries stemming from the allegedly illegal eviction until after the state court's issuance of the warrant of eviction (and the court's subsequent refusal to vacate that judgment), the unlawful eviction claim is barred by *Rooker-Feldman*. Accordingly, the last requirement, that plaintiff commenced the proceedings in the instant action after the state court judgment was rendered, is also met here despite the fact that the original complaint was filed in this case

prior to the stipulation of settlement. *See Lomnicki v. Cardinal McCloskey Servs.*, No. 04 Civ. 4548 (KMK), 2007 WL 2176059, at \*6 (S.D.N.Y. July 26, 2007) ("Because the filing of the Second Amended Complaint makes the initial complaint a nullity, the operative complaint, Plaintiff's Second Amended Complaint, followed the state court judgment." (citing *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)).

However, as stated below, even assuming *arguendo* that the *Rooker Feldman* doctrine does not bar plaintiffs' unlawful eviction claim, it must still be dismissed, because the Court finds that it is barred under ordinary preclusion principles. The same is not true, however, of plaintiffs' retaliation claim, as discussed *supra*, and plaintiffs' breach of contract and breach of the implied duty of good faith and fair dealing claims (hereinafter, the "breach claims"). Although it appears that a portion of plaintiffs' amended complaint complains of injuries caused by the state court's issuance of the warrant of eviction, namely, the unlawful eviction claim, the breach claims rely on the factual allegations of discrimination and retaliation based on disability that also support the FHAA and NYSHRL claims. Contrary to defendants' contention, the breach claims do not allege that in seeking to evict plaintiff *on the basis of her holdover status*, defendants acted illegally; rather, the amended complaint makes clear that such alleged breaches occurred as the result of defendants' alleged discriminatory and retaliatory actions.[16]

Again, whether the eviction proceedings were based on a retaliatory or non-retaliatory motive is unresolvable on a motion to dismiss, and the purported validity of Reyes' status as a holdover tenant is not dispositive of that question. The Court will not review the validity of the warrant of eviction, but to the extent that the rest of plaintiffs' claims do not hinge on a review thereof, they are not barred from consideration by the Court. Indeed, there is no indication of a final judgment in the eviction proceedings regarding any discrimination or retaliation claims, or the breach claims. There is also no indication that such issues were litigated or argued, or that they played a part in the state court's determination to issue the warrant of eviction, as discussed in more detail *infra*. The only claim in the amended federal court complaint, alleging injury flowing from the state court judgment issuing the warrant of eviction, is the unlawful eviction claim. Thus, at this juncture, the Court cannot determine that any other claims are also barred by

_____

however, the Court finds that here, plaintiffs' other claims are not "inextricably intertwined" with the state court judgment so that a review of such is necessary. Similarly, in *Trang v. Concris Realty Co.*, No. 05 Civ. 5441 (RJD) (LB), 2005 WL 1398004 (E.D.N.Y. June 14, 2005), a full trial had been conducted by the housing court on the propriety of the warrant of eviction, which plaintiff had claimed was made on the basis of discrimination, and thus, the court ruled that *Rooker-Feldman* applied because "[b]efore this Court could find that plaintiff has been the victim of a discrimination, the Court would have to find that the housing court erred in issuing a warrant for plaintiff's eviction from the subject premises." *Id.*, at \*2. In any event, although defendants rely on these cases, they do not take the position that the doctrine bars plaintiffs' claims regarding discrimination; they only argue that it applies to the extent that plaintiffs challenge the lawfulness of the eviction. (*See* Def.'s Mem., at 12 n.6).

_____

[16]  Defendants rely on an unpublished Second Circuit case from 2003, *Babalola v. B.Y. Equities, Inc.,* 63 Fed. Appx. 534 (2d Cir. Apr. 11, 2003), to argue that plaintiffs' claims are barred because a determination on them involves a review of the state court decision on the validity of the warrant of eviction that was issued. Unlike in that case,

*Rooker-Feldman* and thus outside this Court's jurisdiction.

### b. Collateral Estoppel

A court may dismiss a claim on *res judicata* or collateral estoppel grounds on either a motion to dismiss or a motion for summary judgment. *See Salahuddin v. Jones,* 992 F.2d 447, 449 (2d Cir. 1993) (affirming dismissal of claims under Rule 12(b) on grounds of *res judicata* ); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992), *cert. denied*, 506 U.S. 821 (1992); *see also Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607 (DC), 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005) ("In cases where some of those factual allegations have been decided otherwise in previous litigation, however, a court may take judicial notice of those proceedings and find that plaintiffs are estopped from re-alleging those facts."); *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993) ("the defense of res judicata or collateral estoppel may be brought, under appropriate circumstances, either via a motion to dismiss or a motion for summary judgment").

"[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted); *accord Hoblock*, 422 F.3d at 94. "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985)). Relevant to this case, the collateral estoppel test does not include a requirement that the parties against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against in the current proceeding. *See United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Amadsau v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. 2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action.").

In this case, collateral estoppel bars plaintiffs' unlawful eviction claim, which involved a determination of ultimate fact that was squarely addressed in the eviction proceedings, as reflected by the state court judgment.[17] However, as noted *supra*, no other issues were addressed in the state court judgment, and the fact of Reyes' holdover status is not "decisive" of any other claims in this

---

[17] The state court judgment of June 11, 2008 is not subject to reasonable dispute and is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201.

action. Other courts have reached the same conclusion in similar factual situations, and the Court agrees that because the only issue addressed in the state court was the holdover status of Reyes, no other issues were litigated and thus barred by collateral estoppel. *See Glover v. Jones*, 522 F. Supp. 2d 496, 506 (W.D.N.Y. 2007) ("Here, the issue is whether Maye committed quid pro quo discrimination against Plaintiff by evicting her because she refused his invitation to go on a trip with him. This issue was neither raised nor litigated in the eviction proceeding in Rochester City Court, and consequently Plaintiff's quid pro quo eviction claim is not barred by collateral estoppel."); *Lachira v. Sutton*, No. 3:05 Civ. 1585 (PCD), 2007 WL 1346913, at *15 (D. Conn. May 7, 2007) ("Defendants argue, based on the entry of judgment, that the Housing Court judge necessarily determined that the Stipulated Agreement and anticipated eviction were lawful. This finding does not preclude Plaintiff from now arguing that Defendants' discriminated against her pursuant to the FHA or that they subjected her to intentional infliction of emotional distress . . . . She does not seek to disturb the agreement . . . that [the defendant] is entitled to possession of the apartment after June 30, 2007. Accordingly, the doctrine of collateral estoppel does not apply.") (footnote omitted). Although "[a] stipulation of settlement, so-ordered by a judge, can be given preclusive effect if there are factual or legal findings contained therein[,]" "without such findings, there is no preclusive effect." *37-01 31st Ave. Realty Corp. v. Safed*, 20 Misc. 3d 762, 767 (N.Y. Civ. Ct. 2008) (citing *Yanguas v. Wai Wai Pun*, 147 A.D.2d 635 (N.Y. App. Div. 1989)). Thus, even if the Court were to consider the terms of the stipulation of settlement, it contains no factual or legal findings other than the stay of a judgment of possession and warrant of eviction, and a waiver of Reyes' right to seek credits from the owner. Consequently, the Court finds no other issues to be barred by collateral estoppel.

### c. *Res Judicata*

Under the doctrine of *res judicata*, otherwise known as claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)) (internal quotation marks and emphasis omitted); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980). "In applying the doctrine of res judicata, [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgement would have had in state court." *Burka v. N.Y. City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994). New York courts apply a transactional analysis of *res judicata*, "'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" *Id.* (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The doctrine applies only if "(1) there is a previous adjudication on the merits; (2) the previous action involved [defendant] or its privy; and (3) the claims involved were or could have been raised in the previous action." *Whelton v. Educ. Credit Mgmt. Corp.*, 432 F.3d 150, 155 (2d Cir. 2005) (citing *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000)). Unlike the *Rooker-Feldma*n doctrine, there is no requirement that the state court judgment be rendered before the federal action is commenced. Furthermore, "[i]t is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002).

"In determining whether a second suit is barred by this doctrine, the fact that the first and second suits involved the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (citation and quotation marks omitted). "Rather, the first judgment will preclude a second suit only when it involves the same 'transaction' or connected series of transactions as the earlier suit." *Id.* Therefore, as the Second Circuit has noted, "the obvious starting point in a preclusion analysis is a determination of the issues that were litigated in the first action." *Flaherty*, 199 F.3d at 613. Furthermore, in evaluating the *res judicata* effect of a prior action, "courts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer*, 937 F.2d at 774.

The Court finds that only plaintiffs' unlawful eviction claim in the instant action is barred by the doctrine of *res judicata*. As noted *supra*, plaintiff Reyes was issued a warrant of eviction by order of the state court, based on the stipulation of settlement, and the state court rejected plaintiff's challenge to vacate such. Accordingly, the issue of the lawfulness of plaintiffs' eviction based on Reyes' holdover tenancy has been decided, and this Court is precluded from hearing the claim of unlawful eviction under the doctrine of *res judicata*. The judgment of the New York court is accordingly entitled to preclusive effect under the *res judicata* doctrine. If plaintiff believes that the judgment of that court was erroneous, the appropriate manner for plaintiff to challenge the decision is through direct appeal and not a collateral attack in federal court. *See Fidelo v. Mobil Oil Corp.,* No. 89 Civ. 6419 (CSH), 1990 WL 165758, at *3 (S.D.N.Y. Oct. 19, 1990).

However, as in the analysis of collateral estoppel and *Rooker-Feldman*, no other claims fail as a matter of law based on the state court judgment. Again, the judgment contains no factual or legal findings other than a judgment of possession and a stay of the warrant of eviction, and the factual basis underlying Reyes' holdover status is distinct from that underlying her discrimination and retaliation claims. To the extent that defendants argue that plaintiffs raised the breach claims in the state court and the state court rejected those claims, the Court disagrees. The state court judgment does not reflect any consideration of the breach claims, and plaintiffs' breach claims, based on discriminatory and retaliatory actions, do not turn solely on whether or not Reyes was lawfully evicted. *See Glover*, 522 F. Supp. 2d at 505-06 ("Here, the prior action was a proceeding in Rochester City Court, seeking a judgment of eviction and a money judgment for back rent. In a similar situation, the Second Circuit Court of Appeals held that a prior City Court judgment of eviction did not bar the evicted tenant from subsequently bringing a Title VII lawsuit . . . . Accordingly, Plaintiff's claim is not barred by res judicata.") (citing *Bottini v. Sadore Management Corp.*, 764 F.2d 116, 121-22 (2d Cir. 1985)); *cf. Okolie*, 589 F. Supp. 2d at 214-15 (finding that *res judicata* barred the plaintiff's due process claims with respect to his commercial tenancy, which hinged on his property right to such tenancy, as a result of the underlying state court holdover proceedings).[18] There was also no general

---

[18] The Court is not persuaded by defendants' reliance on *Springer v. Lincoln Shore Owners, Inc.*, No. 03 Civ. 4676 (FB) (KAM), 2007 WL 2403165, at *3-4 (E.D.N.Y. Aug. 16, 2007), because in that case, the plaintiffs challenged the legality of a termination of a lease, where the housing court had

release of plaintiffs' claims in the stipulation, and defendants do not argue that plaintiffs waived any right to pursue her discrimination claims. *Cf. Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 2002 WL 1610923, at *5 (S.D.N.Y. July 22, 2002) ("The purpose of the release was to settle a number of disputes between her and Felds Realty that had arisen out of their landlord-tenant relationship, including not only the holdover proceedings but also a number of other litigations that had arisen between the parties as part of the same landlord-tenant relationship and any other disputes relating to these events to date between them."). In short, the Court finds that plaintiffs' claims, with the exception of the unlawful eviction claim, survive dismissal on these grounds.

### D. Whether Fairfield is Properly Named as a Defendant

Defendants also argue that Fairfield is the wrong corporate defendant in the instant action because it is not the fee owner of the building. First, the amended complaint alleges otherwise. (*See* Compl. ¶ 15 ("During her stay at the property owned by Defendant FAIRFIELD. . . ."); Compl. ¶ 13 ("Plaintiff, ELLEN REYES and her daughter JOY REYES moved into an apartment owned and operated by Defendant FAIRFIELD.").) In any event, even if Fairfield is only the operator and manager of the premises, Fairfield is still properly the subject of claims arising under the FHAA. *See Clifton Terrace Assocs., Ltd. v. United Technologies Corp.*, 929 F.2d 714, 720 (D.C. Cir. 1991) (§ 3604(f)(2) is "directed at those who provide housing and then discriminate in the provision of attendant services or facilities, or those who otherwise control the provision of housing services and facilities," which, in the case of rental units, will generally mean "the owner or *manager* of the property") (emphasis added); *cf. Tanski*, 2007 WL 1017020, at *22 ("The Court agrees with those courts that have held that liability under the Fair Housing Act for discriminatory design and construction should be imposed broadly . . . . There are no express statutory limitations on possible defendants . . . . The purpose of the Fair Housing Act to create available housing for the handicapped is best served by imposing broad liability on all those people and entities that are involved in designing and constructing the various aspects of a covered multifamily dwelling.").

Although plaintiffs assert that all defendants have been properly named in this action, they seek leave to amend the amended complaint to add the fee owner of the building as a defendant. Under Rule 15(a), leave to amend "shall be freely granted when justice so requires." Motions for leave to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Aetna Casualty and*

---

already ruled that plaintiffs had violated the lease pursuant to the terms of a stipulation of settlement in a holdover proceeding and that the defendant had a right to terminate the lease. *See id.*, at *3. Specifically, the plaintiffs in that case argued that the defendant, rather than terminating the lease, should have reasonably accommodated plaintiffs by staying or discontinuing the eviction proceeding and that the termination of the lease thus violated the FHA and ADA. *See id.*, at *4 (distinguishing the situation of a permissive *counterclaim*, as opposed to defense (which was at issue in that case), and noting that New York's permissive counterclaim may save from *res judicata* those claims that could have been raised but were not in a prior proceeding). In this case, the reasonable accommodations requested did not constitute a *defense* in the eviction proceeding, and thus *res judicata* does not apply beyond the unlawful eviction claim.

*Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005). In addition, where, as here the proposed amendment seeks to join new parties, the requirements of Rule 20 must also be satisfied. *See, e.g.*, *R & M Jewelry, LLC v. Michael Anthony Jewelers, Inc.*, 221 F.R.D. 398, 399 (S.D.N.Y. 2004). Rule 20(a) allows joinder of additional defendants if plaintiffs: (1) assert against them any right of relief arising out of the same series of transactions or occurrences, and (2) common questions of law or fact exist as to all defendants. Fed. R. Civ. P. 20(a); *see also Nassau County Assoc. of Ins. Agents, Inc. v. Aetna Life & Casualty Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974). Because the Court finds that these standards are easily satisfied with respect to plaintiffs' request to add the fee owner, plaintiffs are granted leave to amend the complaint accordingly.

### E. Individual Defendants

Finally, defendants argue that the FHAA claims against the individual defendants should be dismissed because the amended complaint lacks allegations that they engaged in any affirmative acts of discrimination or were enforcing discriminatory rules or policies.

First, the Court disagrees that the amended complaint does not allege that the individual defendants engaged in any affirmative acts or enforcement of discriminatory rules or policies. The amended complaint alleges that the second field visit by the NYDHR was performed in the company of the individual defendants, who "informed the State Division that the Defendants would install lighting on both sides of the building at the driveways and fix the potholes" but then allegedly failed to do so. (Compl. ¶ 25.) Further, plaintiffs allege that "prior to LIHS's involvement, Defendant Ford told Plaintiff that JOY would

get wheelchair access since it was hard for her to get in the apartment." (Compl. ¶ 26.) The amended complaint further alleges that all the defendants failed to reasonably accommodate Joy's disability and failed to take action over several years, and that they were fully aware of the complaints plaintiff Reyes had lodged with the NYDHR and LIHS. (Compl. ¶¶ 27-28, 34.) Such allegations are sufficient, at this early stage of the litigation, to withstand a motion to dismiss. The FHAA does not limit liability only to landlords or non-individual defendants, and defendants do not argue otherwise. *See Andujar v. Hewitt*, No. 02 Civ. 2223 (SAS), 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002) ("Aggrieved persons have long been permitted to assert Fair Housing Act claims against individual defendants who engaged in affirmative acts of discrimination or enforced a corporation's discriminatory rules or policies."); *see also O'Reilly v. Conn. Light and Power Co.*, No. 3:06 Civ. 2008 (RNC), 2009 WL 248428, at *3 (D. Conn. Feb. 2, 2009) ("Defendants contend that they are entitled to summary judgment on this claim principally on the ground that [section 3617 of the FHA] applies only to landlords. It is not clear that the statute is so limited.") (footnote omitted and collecting cases)).

### IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiffs' amended complaint is granted in part and denied in part. Specifically, the motion is granted with respect to plaintiffs' unlawful eviction claim, which is dismissed with prejudice for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and, in the alternative, under Fed. R. Civ. P. 12(b)(6). The motion is also granted with respect to the IIED and Section 1982 claims pursuant to Fed. R. Civ. P. 12(b)(6), but plaintiff is granted leave to replead those claims by filing a second amended complaint within thirty (30) days of the date of

this Memorandum and Order. Defendants' motion is denied with respect to all other claims, in accordance with this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 24, 2009
        Central Islip, NY

* * *

Plaintiffs are represented by Frederick K. Brewington of the Law Offices of Frederick K. Brewington, 50 Clinton Street, Suite 501, Hempstead, New York 11550 and Lester Wayne Mackey of the Law Office of Lester Wayne Mackey, 434 Nassau Road, Roosevelt, New York 11575. Defendants are represented by Andrew L. Richards and Scott Green of Kaufman Dolowich Schneider Bianco & Boluck, LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York 11797 and Robert L. Schonfeld of Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York 11530.